NOTICE OF OBJECTION TO CONFIRMATION

DITECH FINANCIAL LLC has filed papers with the Court to object to the Confirmation of the Chapter 13 Plan.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to object to the Confirmation of the Chapter 13 Plan, or if you want the Court to consider your views on the Objection, then on or before, you or your attorney must:

File with the Court an answer, explaining your position at:
**Clerk**
**U.S. Bankruptcy Court**
**50 Walnut Street, 3rd Floor**
**Newark, NJ 07102**

If you mail your response to the Court for filing, you must mail it early enough so that the Court will *receive* it on or before the date stated above.

You must also mail a copy to:

Phelan Hallinan Diamond & Jones, PC          MARIE-ANN GREENBERG, Trustee
1617 JFK Boulevard, Suite 1400               30 TWO BRIDGES ROAD, SUITE 330
Philadelphia, PA 19103                       FAIRFIELD, NJ 07004

Attend the hearing scheduled to be held on 10/03/2019 in the NEWARK Bankruptcy Court, at the following address:
**U.S. Bankruptcy Court**
**50 Walnut Street, 3rd Floor**
**Newark, NJ 07102**

If you or your attorney do not make these steps, the Court may decide that you do not oppose the relief sought in the Objection and may enter an Order granting that relief.

Date: October 2, 2019

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

**File No. 830206**
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard
Philadelphia, PA 19103
856-813-5500
FAX Number 856-813-5501
DITECH FINANCIAL LLC

| In Re: | UNITED STATES BANKRUPTCY COURT |
|---|---|
| SONYA MCMILLAN | FOR THE DISTRICT OF NEW JERSEY |
| | NEWARK VICINAGE |
| | |
| | Chapter 13 |
| Debtor | |
| | Case No. 19-17063 - VFP |

Hearing Date: 10/03/2019

The undersigned, Phelan Hallinan Diamond & Jones, PC, attorneys for Secured Creditor, DITECH

FINANCIAL LLC, the holder of a Mortgage on debtor residence located at 5 JEFFERSON STREET, UNIT 3,

CLIFTON, NJ 07011 hereby objects to the Confirmation of the debtor proposed Chapter 13 Plan on the following

grounds:

         1.      On September 9, 2019, Movant filed Proof of Claim listing pre-petition arrears in the

amount of $23,655.70. A copy of the Proof of Claim is attached hereto as Exhibit "A" and made a part hereof.

         2.      Debtor's Plan fails to cure the delinquency pursuant to 11 U.S.C. §1322(b)(5).

         3.      Debtor's Plan currently provides for payment to Movant in the amount of $21,745.22. A

copy of the Debtor's Plan is attached hereto as Exhibit B. Movant therefore objects to Debtor's Plan as it is

underfunded. Debtor's Plan should be further amended to fully fund the arrears owed to Movant or

Confirmation should be denied.

        WHEREFORE, DITECH FINANCIAL LLC respectfully requests that the Confirmation of Debtor Plan be

denied.

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

Dated: October 2, 2019

# Exhibit "A"

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | SONYA MCMILLAN |
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court for the: | NEWARK Vicinage of the    District of New Jersey |
| | (State) |
| Case Number | 19-17063 VFP |

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

The law requires that filer **must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500.000, imprisoned for up to 5 years, or both. 18 U.S.C. § 152, 157, and 3571.
**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1:    Identify the Claim

| | | | |
|---|---|---|---|
| 1. | **Who is the current creditor?** | DITECH FINANCIAL LLC | |
| | | Name of the current creditor (the person or entity to be paid for this claim) | |
| | | Other names the creditor used with the debtor | |

| | | |
|---|---|---|
| 2. | **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From Whom? _____ |

| | | | |
|---|---|---|---|
| 3. | **Where should notices and payments to the creditor be sent?** | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | DITECH FINANCIAL LLC | DITECH FINANCIAL LLC |
| | | P.O. BOX 12740 | P.O. BOX 0049 |
| | | Number          Street | Number          Street |
| | | TEMPE        AZ        82584-0046 | PALATINE      IL        60055-0049 |
| | | City        State        Zip | City        State        Zip |
| | | Contact Phone    (888) 298-7785 | Contact Phone    (888) 298-7785 |
| | | Contact Email    poc.team@ditech.com | Contact Email    poc.team@ditech.com |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one) | |

| | | |
|---|---|---|
| 4. | **Does this claim amend one already filed?** | ☒ No<br>☐ Yes.  Claim number on court claims registry (if known) _____        Filed on _____ |

| | | |
|---|---|---|
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

| **Part 2:** | **Give Information about the Claim as of the Date the Case Was Filed** |
|---|---|

**6.** **Do you have any number you use to identify the debtor?**

☐ No

☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 2430

---

**7.** **How much is the claim?**    $235,102.86                                . **Does this amount include interest or other charges?**

☐ No

☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8.** **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach any document supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

---

**9.** **Is all or part of the claim secured?**

☐ No

☒ Yes. The claim is secured by a lien on property.

**Nature of property:**  5 JEFFERSON STREET, UNIT 3, CLIFTON, NJ 07011

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official form 410-A) with the *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**    Deed of Trust, Mortgage, Note
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ _____

**Amount of the claim that is secured:**    $  $235,102.86

**Amount of the claim that is unsecured:**    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $  $23,655.70

**Annual Interest Rate** (when case was filed) 4.000%
☒ Fixed
☐ Variable

---

**10.** **Is this claim based on a lease?**

☒ No

☐ Yes.    **Amount necessary to cure any default as of the date of the petition.**  $_____

---

**11.** **Is this claim subject to a right to setoff?**

☒ No

☐ Yes.    Identify the property: _____

---

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ | No | | |
|---|---|---|---|---|---|
| | | ☐ | Yes. *Check all that apply:* | | **Amount entitled to priority** |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | | ☐ Domestic support obligation (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ |
| | | | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family or household use. 11 U.S.C. § 507(a)(7). | | $ |
| | | | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ |
| | | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ |
| | | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ |
| | | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $ |
| | | | *Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it.
FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorized courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. § 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    September 9, 2019
                    MM / DD / YYYY

/s/ Nicholas V. Rogers
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Nicholas V. Rogers, Esq. | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Phelan Hallinan Diamond & Jones, PC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1617 JFK Boulevard, Suite 1400 | | |
| | Philadelphia, PA 19103 | | |
| Contact phone | 856-813-5500 | Email | nicholas.rogers@phelanhallinan.com |

Mortgage Proof of Claim Attachment **(12/15)**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 19-17063 VFP | Principal balance: | $216,602.45 | Principal & interest due: | $11,891.36 | Principal & interest: | $914.72 |
| Debtor 1: | SONYA MCMILLAN | Deferred Principal: | $0.00 | Prepetition fees due: | $2,504.60 | Monthly escrow: | $566.15 |
| Debtor 2: | | Interest due: | $9,576.03 | Escrow deficiency for funds advanced: | $6,419.78 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: | 2430 | Fees, costs due: | $2,504.60 | Projected escrow shortage: | $2,839.96 | Total monthly payment: | $1,480.87 |
| Creditor: | DITECH FINANCIAL LLC | Escrow deficiency for funds advanced: | $6,419.78 | Less funds on hand: | - $0.00 | | |
| Servicer: | DITECH FINANCIAL LLC | Less total funds on hand: | - $0.00 | Total prepetition arrearage: | $23,655.70 | | |
| Fixed accrual/daily simple interest/other: | Fixed Accrual | Total debt: | $235,102.86 | | | | |

### Part 5: Loan Payment History from First Date of Default:

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin. Int & esc past due balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges Balance | Q. Unapplied Funds Balance |
| 05/01/2017 | | | | Beginning Balance | | | | | | | | $218,680.48 | | ($1,052.96) | $0.00 | $0.00 |
| 05/01/2017 | $1,500.25 | | | Payment Due | | $1,500.25 | | | | | | $218,680.48 | | ($1,052.96) | $0.00 | $0.00 |
| 05/16/2017 | | | $45.74 | Late Charge | | $1,500.25 | | | | ($45.74) | | $218,680.48 | | ($1,052.96) | $45.74 | $0.00 |
| 05/24/2017 | | $1,500.25 | | Payment Applied | 06/01/2017 | $0.00 | $185.79 | $728.93 | $585.53 | | | $218,494.69 | | ($467.43) | $45.74 | $0.00 |
| 05/24/2017 | | $45.74 | | Credit to Escrow | | $0.00 | | | $45.74 | | | $218,494.69 | | ($421.69) | $45.74 | $0.00 |
| 06/01/2017 | $1,500.25 | | | Payment Due | | $1,500.25 | | | | | | $218,494.69 | | ($421.69) | $45.74 | $0.00 |
| 06/16/2017 | | | $45.74 | Late Charge | | $1,500.25 | | | | ($45.74) | | $218,494.69 | | ($421.69) | $91.48 | $0.00 |
| 07/01/2017 | $1,500.25 | | | Payment Due | | $3,000.50 | | | | | | $218,494.69 | | ($421.69) | $91.48 | $0.00 |
| 07/17/2017 | | | $45.74 | Late Charge | | $3,000.50 | | | | ($45.74) | | $218,494.69 | | ($421.69) | $137.22 | $0.00 |
| 07/31/2017 | | | $1,703.28 | Escrow Advance - Taxes | | $3,000.50 | | | ($1,703.28) | | | $218,494.69 | | ($2,124.97) | $137.22 | $0.00 |
| 08/01/2017 | $1,500.25 | | | Payment Due | | $4,500.75 | | | | | | $218,494.69 | | ($2,124.97) | $137.22 | $0.00 |
| 08/16/2017 | | | $45.74 | Late Charge | | $4,500.75 | | | | ($45.74) | | $218,494.69 | | ($2,124.97) | $182.96 | $0.00 |
| 08/22/2017 | | $3,137.72 | | Funds Received | | $4,500.75 | | | | | $3,137.72 | $218,494.69 | | ($2,124.97) | $182.96 | $3,137.72 |
| 08/22/2017 | | | | Payment Applied | 07/01/2017 | $3,000.50 | $186.40 | $728.32 | $585.53 | | ($1,500.25) | $218,308.29 | | ($1,539.44) | $182.96 | $1,637.47 |
| 08/22/2017 | | | | Payment Applied | 08/01/2017 | $1,500.25 | $187.03 | $727.69 | $585.53 | | ($1,500.25) | $218,121.26 | | ($953.91) | $182.96 | $137.22 |
| 09/01/2017 | $1,500.25 | | | Payment Due | | $3,000.50 | | | | | | $218,121.26 | | ($953.91) | $182.96 | $137.22 |
| 09/16/2017 | | | $45.74 | Late Charge | | $3,000.50 | | | | ($45.74) | | $218,121.26 | | ($953.91) | $228.70 | $137.22 |
| 10/01/2017 | $1,500.25 | | | Payment Due | | $4,500.75 | | | | | | $218,121.26 | | ($953.91) | $228.70 | $137.22 |
| 10/05/2017 | | $1,500.25 | | Payment Applied | 09/01/2017 | $3,000.50 | $187.65 | $727.07 | $585.53 | | | $217,933.61 | | ($368.38) | $228.70 | $137.22 |
| 10/23/2017 | | $1,550.00 | | Funds Received | | $3,000.50 | | | | | $1,550.00 | $217,933.61 | | ($368.38) | $228.70 | $1,687.22 |
| 10/23/2017 | | | | Credit to Fees/Charges | | $3,000.50 | | | | $228.70 | ($228.70) | $217,933.61 | | ($368.38) | $0.00 | $1,458.52 |
| 10/31/2017 | | | $1,703.28 | Escrow Advance - Taxes | | $3,000.50 | | | ($1,703.28) | | | $217,933.61 | | ($2,071.66) | $0.00 | $1,458.52 |
| 11/01/2017 | $1,500.25 | | | Payment Due | | $4,500.75 | | | | | | $217,933.61 | | ($2,071.66) | $0.00 | $1,458.52 |
| 11/06/2017 | | $1,541.48 | | Payment Applied | 10/01/2017 | $3,000.50 | $188.27 | $726.45 | $585.53 | $41.23 | | $217,745.34 | | ($1,486.13) | $0.00 | $1,499.75 |
| 11/07/2017 | | | | Payment Applied | 11/01/2017 | $1,500.25 | $188.90 | $725.82 | $585.53 | | ($1,499.75) | $217,556.44 | | ($900.60) | $0.00 | $0.00 |

| Date | | | Description | Date | | | | | | Balance | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/07/2017 | | | Credit to Escrow | | $1,500.25 | | | ($0.50) | | $217,556.44 | ($901.10) | $0.00 | $0.00 |
| 11/30/2017 | | $1,500.25 | Payment Applied | 12/01/2017 | $0.00 | $189.53 | $725.19 | $585.53 | | $217,366.91 | ($315.57) | $0.00 | $0.00 |
| 12/01/2017 | $1,500.25 | | Payment Due | | $1,500.25 | | | | | $217,366.91 | ($315.57) | $0.00 | $0.00 |
| 12/16/2017 | | $45.74 | Late Charge | | $1,500.25 | | | ($45.74) | | $217,366.91 | ($315.57) | $45.74 | $0.00 |
| 01/01/2018 | $1,500.25 | | Payment Due | | $3,000.50 | | | | | $217,366.91 | ($315.57) | $45.74 | $0.00 |
| 01/16/2018 | | $45.74 | Late Charge | | $3,000.50 | | | ($45.74) | | $217,366.91 | ($315.57) | $91.48 | $0.00 |
| 01/17/2018 | $1,500.25 | | Payment Applied | 01/01/2018 | $1,500.25 | $190.16 | $724.56 | $585.53 | | $217,176.75 | $269.96 | $91.48 | $0.00 |
| 01/17/2018 | $49.75 | | Credit to Fees/Charges | | $1,500.25 | | | $49.75 | | $217,176.75 | $269.96 | $41.73 | $0.00 |
| 01/31/2018 | | $1,670.89 | Escrow Advance - Taxes | | $1,500.25 | | | ($1,670.89) | | $217,176.75 | ($1,400.93) | $41.73 | $0.00 |
| 02/01/2018 | $1,500.25 | | Payment Due | | $3,000.50 | | | | | $217,176.75 | ($1,400.93) | $41.73 | $0.00 |
| 02/16/2018 | | $45.74 | Late Charge | | $3,000.50 | | | ($45.74) | | $217,176.75 | ($1,400.93) | $87.47 | $0.00 |
| 03/01/2018 | $1,500.25 | | Payment Due | | $4,500.75 | | | | | $217,176.75 | ($1,400.93) | $87.47 | $0.00 |
| 03/09/2018 | $3,042.23 | | Funds Received | | $4,500.75 | | | | $3,042.23 | $217,176.75 | ($1,400.93) | $87.47 | $3,042.23 |
| 03/09/2018 | | | Payment Applied | 02/01/2018 | $3,000.50 | $190.80 | $723.92 | $585.53 | ($1,500.25) | $216,985.95 | ($815.40) | $87.47 | $1,541.98 |
| 03/09/2018 | | | Payment Applied | 03/01/2018 | $1,500.25 | $191.43 | $723.29 | $585.53 | ($1,500.25) | $216,794.52 | ($229.87) | $87.47 | $41.73 |
| 03/14/2018 | | | Credit to Fees/Charges | | $1,500.25 | | | $41.73 | ($41.73) | $216,794.52 | ($229.87) | $45.74 | $0.00 |
| 04/01/2018 | $1,500.25 | | Payment Due | | $3,000.50 | | | | | $216,794.52 | ($229.87) | $45.74 | $0.00 |
| 04/16/2018 | | $45.74 | Late Charge | | $3,000.50 | | | ($45.74) | | $216,794.52 | ($229.87) | $91.48 | $0.00 |
| 04/20/2018 | | $1,670.88 | Escrow Advance - Taxes | | $3,000.50 | | | ($1,670.88) | | $216,794.52 | ($1,900.75) | $91.48 | $0.00 |
| 04/23/2018 | | $15.00 | Property Inspection | | $3,000.50 | | | ($15.00) | | $216,794.52 | ($1,900.75) | $106.48 | $0.00 |
| 05/01/2018 | $1,500.25 | | Payment Due | | $4,500.75 | | | | | $216,794.52 | ($1,900.75) | $106.48 | $0.00 |
| 05/16/2018 | | $45.74 | Late Charge | | $4,500.75 | | | ($45.74) | | $216,794.52 | ($1,900.75) | $152.22 | $0.00 |
| 06/01/2018 | $1,632.38 | | Payment Due | | $6,133.13 | | | | | $216,794.52 | ($1,900.75) | $152.22 | $0.00 |
| 06/02/2018 | | $1,500.25 | Payment Applied | 04/01/2018 | $4,632.88 | $192.07 | $722.65 | $585.53 | | $216,602.45 | ($1,315.22) | $152.22 | $0.00 |
| 06/19/2018 | | $15.00 | Property Inspection | | $4,632.88 | | | ($15.00) | | $216,602.45 | ($1,315.22) | $167.22 | $0.00 |
| 07/01/2018 | $1,632.38 | | Payment Due | | $6,265.26 | | | | | $216,602.45 | ($1,315.22) | $167.22 | $0.00 |
| 07/16/2018 | | $45.74 | Late Charge | | $6,265.26 | | | ($45.74) | | $216,602.45 | ($1,315.22) | $212.96 | $0.00 |
| 08/01/2018 | $1,632.38 | | Payment Due | | $7,897.64 | | | | | $216,602.45 | ($1,315.22) | $212.96 | $0.00 |
| 08/03/2018 | | $1,707.65 | Escrow Advance - Taxes | | $7,897.64 | | | ($1,707.65) | | $216,602.45 | ($3,022.87) | $212.96 | $0.00 |
| 08/16/2018 | | $45.74 | Late Charge | | $7,897.64 | | | ($45.74) | | $216,602.45 | ($3,022.87) | $258.70 | $0.00 |
| 09/01/2018 | $1,632.38 | | Payment Due | | $9,530.02 | | | | | $216,602.45 | ($3,022.87) | $258.70 | $0.00 |
| 09/12/2018 | | $105.00 | Property Appraisal / BPO | | $9,530.02 | | | ($105.00) | | $216,602.45 | ($3,022.87) | $363.70 | $0.00 |
| 09/26/2018 | | $15.00 | Property Inspection | | $9,530.02 | | | ($15.00) | | $216,602.45 | ($3,022.87) | $378.70 | $0.00 |
| 10/01/2018 | $1,632.38 | | Payment Due | | $11,162.40 | | | | | $216,602.45 | ($3,022.87) | $378.70 | $0.00 |
| 10/16/2018 | | $45.74 | Late Charge | | $11,162.40 | | | ($45.74) | | $216,602.45 | ($3,022.87) | $424.44 | $0.00 |
| 10/31/2018 | | $1,707.64 | Escrow Advance - Taxes | | $11,162.40 | | | ($1,707.64) | | $216,602.45 | ($4,730.51) | $424.44 | $0.00 |
| 11/01/2018 | $1,632.38 | | Payment Due | | $12,794.78 | | | | | $216,602.45 | ($4,730.51) | $424.44 | $0.00 |
| 11/15/2018 | | $0.47 | Legal Costs | | $12,794.78 | | | ($0.47) | | $216,602.45 | ($4,730.51) | $424.91 | $0.00 |
| 11/15/2018 | | $0.47 | Legal Costs | | $12,794.78 | | | ($0.47) | | $216,602.45 | ($4,730.51) | $425.38 | $0.00 |
| 11/16/2018 | | $45.74 | Late Charge | | $12,794.78 | | | ($45.74) | | $216,602.45 | ($4,730.51) | $471.12 | $0.00 |
| 12/01/2018 | $1,400.80 | | Payment Due | | $14,195.58 | | | | | $216,602.45 | ($4,730.51) | $471.12 | $0.00 |
| 12/17/2018 | | $45.74 | Late Charge | | $14,195.58 | | | ($45.74) | | $216,602.45 | ($4,730.51) | $516.86 | $0.00 |
| 01/01/2019 | $1,400.80 | | Payment Due | | $15,596.38 | | | | | $216,602.45 | ($4,730.51) | $516.86 | $0.00 |
| 01/16/2019 | | $45.74 | Late Charge | | $15,596.38 | | | ($45.74) | | $216,602.45 | ($4,730.51) | $562.60 | $0.00 |
| 01/17/2019 | | $1,689.27 | Escrow Advance - Taxes | | $15,596.38 | | | ($1,689.27) | | $216,602.45 | ($6,419.78) | $562.60 | $0.00 |
| 02/01/2019 | $1,400.80 | | Payment Due | | $16,997.18 | | | | | $216,602.45 | ($6,419.78) | $562.60 | $0.00 |
| 02/13/2019 | | $250.00 | Legal Costs | | $16,997.18 | | | ($250.00) | | $216,602.45 | ($6,419.78) | $812.60 | $0.00 |
| 02/13/2019 | | $685.00 | Legal Fees | | $16,997.18 | | | ($685.00) | | $216,602.45 | ($6,419.78) | $1,497.60 | $0.00 |
| 02/15/2019 | | $0.50 | Legal Costs | | $16,997.18 | | | ($0.50) | | $216,602.45 | ($6,419.78) | $1,498.10 | $0.00 |
| 02/19/2019 | | $685.00 | Legal Fees | | $16,997.18 | | | ($685.00) | | $216,602.45 | ($6,419.78) | $2,183.10 | $0.00 |
| 02/21/2019 | | $60.00 | Legal Costs | | $16,997.18 | | | ($60.00) | | $216,602.45 | ($6,419.78) | $2,243.10 | $0.00 |
| 02/22/2019 | | $15.00 | Property Inspection | | $16,997.18 | | | ($15.00) | | $216,602.45 | ($6,419.78) | $2,258.10 | $0.00 |
| 02/27/2019 | | $185.00 | Legal Costs | | $16,997.18 | | | ($185.00) | | $216,602.45 | ($6,419.78) | $2,443.10 | $0.00 |
| 02/28/2019 | | $46.50 | Legal Costs | | $16,997.18 | | | ($46.50) | | $216,602.45 | ($6,419.78) | $2,489.60 | $0.00 |
| 03/01/2019 | $1,400.80 | | Payment Due | | $18,397.98 | | | | | $216,602.45 | ($6,419.78) | $2,489.60 | $0.00 |
| 03/21/2019 | | $15.00 | Property Inspection | | $18,397.98 | | | ($15.00) | | $216,602.45 | ($6,419.78) | $2,504.60 | $0.00 |
| 04/01/2019 | $1,400.80 | | Payment Due | | $19,798.78 | | | | | $216,602.45 | ($6,419.78) | $2,504.60 | $0.00 |
| 04/08/2019 | | | BK Filed | | $19,798.78 | | | | | $216,602.45 | ($6,419.78) | $2,504.60 | $0.00 |

**ADDENDUM**

Documentation provided is in support of right to seek a lift of stay and foreclosure if necessary.

Creditor:  DITECH FINANCIAL LLC

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500

Attorneys for DITECH FINANCIAL LLC

| In Re: | Case No:  19-17063 - VFP |
|---|---|
| Sonya Mcmillan | Judge:  Vincent F. Papalia |
| | Chapter:  13 |

## CERTIFICATION OF SERVICE

1.    I, Aaron Thomas:

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for Phelan Hallinan Diamond & Jones, PC,
who represents DITECH FINANCIAL LLC in the above captioned matter.

☐ am the _____ in the above case and am representing
myself.

2.    On the date below, I sent a copy of the following pleadings and/or documents
to the parties listed below:

Proof of Claim

3.    I hereby certify under penalty of perjury that the above documents were sent
using the mode of service indicated.

Dated:    _09/09/2019_____    /s/ *Aaron Thomas*_____
                                                              Aaron Thomas

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Dionne L. Wade<br>Law Office of Dionne Wade<br>1301 Main Avenue<br>2nd Floor<br>Clifton, NJ 07011 | Debtor's Attorney | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| Marie-Ann Greenberg<br>Chapter 13 Standing Trustee<br>30 Two Bridges Rd<br>Suite 330<br>Fairfield, NJ 07004 | Trustee | ☐ Hand-delivered<br><br>☐ Regular Mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |

* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.

**Field Asset Services, LLC**
131 S Dearborn, 6th Floor 28753
Chicago, IL 60603

Property Insp. - Property Inspection Services - INVOICE

| | |
|---|---|
| Ditech Financial LLC - GTA | Invoice #: 4 |
| | Invoice Status: Check Requested |
| 345 St Peter Street | Input By: Luis Ruiz |
| St Paul, MN 55102 | Date Submitted: 10/1/2018 |
| Re: MCMILLAN SONYA | Invoice Date: 9/26/2018 |
| 5 JEFFERSON ST | Vendor Ref #: |
| CLIFTON, NJ 07011 | Vendor Code: FASI |
| Loan #: | Payee Code: |
| Loan Type: FannieMae | Type: Non Judicial |
| Inv. ID / Cat. ID: / | Order Date 9/20/2018 |
| Cost Center: | Order Complete 9/26/2018 |
| CONV-FN Case No: | Acquisition Date: |
| GSE Code: | Paid in Full Date: N/A |
| GSE REO Rem. Code: | Foreclosure Removal Date: N/A |
| Entity Code: | |
| | MS Status N/A |
| | Relief Requested Date N/A |
| | Protection Begin Date N/A |
| | Protection End Date N/A |
| | HiType |
| | Class Code |

Invoice ID:
Asset Number:
Approver Name: Cole B Walker
Outsourcer:

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 10/1/2018 | | | | 10/8/2018 | 10/10/2018 | |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Property Services - Insp - Occupancy Inspection | | | 09/26/2018 | 1 | $15.00 | $15.00 | $0.00 | $15.00 |
| Note: No-Contact Inspection | | | | | | | | |
| Service From Date: 9/26/2018 | | | Service To Date: 9/26/2018 | | | | | |
| | | | | | | $15.00 | $0.00 | $15.00 |
| Total: | | | | | | $15.00 | $0.00 | $15.00 |

Invoice Level Exceptions
None

Invoice Level Comment
Per Requested Service

Execution Date Time:    10/10/2018 08:33:47 PM                                    Pages: 1/ 1



**KML LAW GROUP, P.C.**
701 Market Street
Philadelphia, PA 19106 1532

## Foreclosure - Foreclosure Services - INVOICE

| | |
|---|---|
| Ditech Financial LLC - MSP | Invoice #:  8 |
| | Invoice Status:  Check Requested(Adj/Exc/Res) |
| 345 St Peter Street | Input By:  Dan Richard |
| St Paul, MN 55102 | Date Submitted:  2/26/2019 |
| Re:  MCMILLAN SONYA | Invoice Date:  2/26/2019 |
| 5 JEFFERSON ST | Vendor Ref #: |
| CLIFTON, NJ 07011 0000 | Vendor Code:  GOLDMC |
| Loan #: | Payee Code: |
| Loan Type:  FannieMae | Type:  Judicial |
| Inv. ID / Cat. ID: | Referral Date:  11/1/2018 |
| Cost Center: | |
| CONV-FN Case No: | |
| GSE Code:  F | Acquisition Date: |
| GSE REO Rem. Code: | Paid in Full Date:  N/A |
| Entity Code: | Foreclosure Removal Date:  N/A |
| | MS Status  N/A |
| | Relief Requested Date  N/A |
| | Protection Begin Date  N/A |
| | Protection End Date  N/A |
| | HiType  1 |
| | Class Code  AA |
| Invoice ID: | First Legal Action:  N/A |
| Asset Number: | Legal Action:  2/13/2019 |
| Approver Name:  Trisha Baca | |
| Outsourcer:  LPS Default Solutions | |

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 2/26/2019 | 3/1/2019 | 3/22/2019 | 3/7/2019 | 3/22/2019 | 3/22/2019 | |

| Fee Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Attorney Fees - Preparation of Loan Assignment | | | 01/28/2019 | 1 | $35.00 | $35.00 | $0.00 | $35.00 |

Note: Non-Recoverable Fees - Preparation of Assignment of Mortgage /Non-Recoverable based on PA/NJ statute
Service From Date: 1/28/2019          Service To Date: 1/28/2019
Review State Rule - Borrower Recoverability, Additional Investor or Business Approval Required

| | | | | | | $35.00 | $0.00 | $35.00 |
|---|---|---|---|---|---|---|---|---|

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Service Costs - Statutory Mailings | | | 11/15/2018 | 1 | $0.47 | $0.47 | $0.00 | $0.47 |

Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details
Service From Date: 11/15/2018          Service To Date: 11/15/2018

| Recording Costs - Certificate of Regularity | | | 01/28/2019 | 1 | $84.00 | $84.00 | $0.00 | $84.00 |
|---|---|---|---|---|---|---|---|---|

Note: Other Non Recoverable Recording Costs - Certificate of Regularity - Complaint /Non-Recoverable based on PA/NJ statute
Service From Date: 1/28/2019          Service To Date: 1/28/2019

| Recording Costs - Assignment Recording | | | 01/25/2019 | 1 | $56.50 | $56.50 | $0.00 | $56.50 |
|---|---|---|---|---|---|---|---|---|

Note: Recorder of Deeds - AOM (Non-Recoverable) Non-Recoverable based on PA/NJ statute
Service From Date: 1/25/2019          Service To Date: 1/25/2019

| | | | | | | $140.97 | $0.00 | $140.97 |
|---|---|---|---|---|---|---|---|---|

Execution Date Time:    03/22/2019 09:31:38 PM                                            Pages: 1/ 2

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Service Costs - Statutory Mailings | | | 11/15/2018 | 1 | $0.47 | $0.47 | $0.00 | $0.47 |

Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details

Service From Date: 11/15/2018          Service To Date: 11/15/2018

|  |  |  |  |  |  | $0.47 | $0.00 | $0.47 |
|---|---|---|---|---|---|---|---|---|
| Total: | | | | | | $176.44 | $0.00 | $176.44 |

**Invoice Level Exceptions**

Review State Rule - Borrower Recoverability, Additional Investor or Business Approval Required

**Invoice Level Comment**

OK

Execution Date Time:    03/22/2019 09:31:38 PM                         Pages: 2/ 2

**Xome Field Services LLC fka Field**

28753 Network Place

Chicago, IL 60673

### Property Insp. - Property Inspection Services - INVOICE

| | |
|---|---|
| Ditech Financial LLC - MSP | Invoice #: ▓▓▓ |
| | Invoice Status: Check Requested |
| 345 St Peter Street | Input By: Luis Ruiz |
| St Paul, MN 55102 | Date Submitted: 4/1/2019 |
| Re: MCMILLAN SONYA | Invoice Date: 3/21/2019 |
| 5 JEFFERSON ST | Vendor Ref #: |
| CLIFTON, NJ 07011 0000 | Vendor Code: FASI |
| Loan #: | Payee Code: ▓▓▓ |
| Loan Type: FannieMae | Type: Non Judicial |
| Inv. ID / Cat. ID: ▓▓ / ▓▓ | Order Date 3/19/2019 |
| Cost Center: | Order Complete 3/21/2019 |
| CONV-FN Case No: | Acquisition Date: |
| GSE Code: F | Paid in Full Date: N/A |
| GSE REO Rem. Code: | Foreclosure Removal Date: N/A |
| Entity Code: | |
| | MS Status N/A |
| | Relief Requested Date N/A |
| | Protection Begin Date N/A |
| | Protection End Date N/A |
| | HiType 1 |
| | Class Code AA |

Invoice ID: ▓▓▓
Asset Number:
Approver Name: Jennifer Passen
Outsourcer:

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 4/1/2019 | | | | 4/8/2019 | 4/8/2019 | |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Property Services - Insp - Occupancy Inspection | | | 03/21/2019 | 1 | $15.00 | $15.00 | $0.00 | $15.00 |

**Note: Occupancy Verification**
Service From Date: 3/21/2019          Service To Date: 3/21/2019

| | | | | | $15.00 | $0.00 | $15.00 |
|---|---|---|---|---|---|---|---|
| **Total:** | | | | | $15.00 | $0.00 | $15.00 |

**Invoice Level Exceptions**
None

**Invoice Level Comment**
Per Requested Service

**KML LAW GROUP, P.C.**

701 Market Street

Philadelphia, PA 19106 1532



## Foreclosure - Foreclosure Services - INVOICE

| | |
|---|---|
| Ditech Financial LLC - MSP | Invoice #: |
| | Invoice Status: Check Requested(Adj/Exc/Res) |
| 345 St Peter Street | Input By: Dan Richard |
| St Paul, MN 55102 | Date Submitted: 3/4/2019 |
| Re: MCMILLAN SONYA | Invoice Date: 3/1/2019 |
| 5 JEFFERSON ST | Vendor Ref #: |
| CLIFTON, NJ 07011 0000 | Vendor Code: GOLDMC |
| Loan #: 0 | Payee Code: |
| Loan Type: FannieMae | Type: Judicial |
| Inv. ID / Cat. ID: | Referral Date: 11/1/2018 |
| Cost Center: | |
| CONV-FN Case No: | |
| GSE Code: F | Acquisition Date: |
| GSE REO Rem. Code: | Paid in Full Date: N/A |
| Entity Code: | Foreclosure Removal Date: N/A |
| | MS Status N/A |
| | Relief Requested Date N/A |
| | Protection Begin Date N/A |
| | Protection End Date N/A |
| | HiType 1 |
| | Class Code AA |
| Invoice ID: | First Legal Action: N/A |
| Asset Number: | Legal Action: 2/13/2019 |
| Approver Name: Wyatt Davis | |
| Outsourcer: LPS Default Solutions | |

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 3/4/2019 | 3/27/2019 | 4/15/2019 | | 4/15/2019 | 4/15/2019 | |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Recording Costs - Fee / Recording | | | 02/28/2019 | 1 | $46.50 | $46.50 | $0.00 | $46.50 |
| Note: Recording Costs - Lis Pendens (Recoverable) | | | | | | | | |
| Service From Date: 2/28/2019 | | | Service To Date: 2/28/2019 | | | | | |
| Title Costs - Title Search | | | 03/01/2019 | 1 | $25.00 | $25.00 | ($25.00) | $0.00 |
| Note: Title Costs - Title Search fee (Recoverable) | | | | | | | | |
| Service From Date: 3/1/2019 | | | Service To Date: 3/1/2019 12:00:00 | | | | | |
| Review State Rule - Borrower Recoverability | | | | | | | | |
| Title Costs - Title Search | | | 02/27/2019 | 1 | $245.00 | $245.00 | ($60.00) | $185.00 |
| Note: Title Costs - Title Search (Recoverable) | | | | | | | | |
| Service From Date: 2/27/2019 | | | Service To Date: 2/27/2019 | | | | | |
| Review State Rule - Borrower Recoverability | | | | | | | | |
| | | | | | | $316.50 | ($85.00) | $231.50 |
| **Total:** | | | | | | **$316.50** | **($85.00)** | **$231.50** |

**Invoice Level Exceptions**

Review State Rule - Borrower Recoverability, Review State Rule - Borrower Recoverability

**Invoice Level Comment**

OK

**Execution Date Time:** 04/15/2019 09:25:26 PM                              **Pages: 1/ 1**

**KML LAW GROUP, P.C.**

701 Market Street

Philadelphia, PA 19106 1532



## Foreclosure - Foreclosure Services - INVOICE

| | |
|---|---|
| Ditech Financial LLC - MSP | Invoice #: ▇▇▇1 |
| | Invoice Status: Check Requested(Exc) |
| 345 St Peter Street | Input By: Dan Richard |
| St Paul, MN 55102 | Date Submitted: 3/5/2019 |
| Re: MCMILLAN SONYA | Invoice Date: 3/5/2019 |
| 5 JEFFERSON ST | Vendor Ref #: ▇▇▇ |
| CLIFTON, NJ 07011 0000 | Vendor Code: GOLDMC |
| Loan #: | Payee Code: ▇▇▇ |
| Loan Type: FannieMae | Type: Judicial |
| Inv. ID / Cat. ID: ▇▇▇ | Referral Date 11/1/2018 |
| Cost Center: | |
| CONV-FN Case No: | |
| GSE Code: F | Acquisition Date: |
| GSE REO Rem. Code: | Paid in Full Date: N/A |
| Entity Code: | Foreclosure Removal Date: N/A |
| | |
| | MS Status N/A |
| | Relief Requested Date N/A |
| | Protection Begin Date N/A |
| | Protection End Date N/A |
| | HiType 1 |
| | Class Code AA |
| Invoice ID: ▇▇▇ | |
| Asset Number: | First Legal Action: N/A |
| Approver Name: HEIDEMARIE DANSEGLIO | Legal Action: 2/13/2019 |
| Outsourcer: LPS Default Solutions | |

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 3/5/2019 | 3/28/2019 | 4/26/2019 | | 4/26/2019 | 4/26/2019 | |

| Fee Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Attorney Fees - Foreclosure Through Service Complete | | | 02/19/2019 | 1 | $685.00 | $685.00 | $0.00 | $685.00 |

Note: Standard Foreclosure Fee (Recoverable)/70% allowable CONV service completed fee less 50% previously billed

Service From Date: 2/19/2019    Service To Date: 2/19/2019

Review State Rule - Borrower Recoverability

| Fee Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Attorney Fees - Foreclosure Through Complaint | | | 02/13/2019 | 1 | $685.00 | $685.00 | $0.00 | $685.00 |

Note: Standard Foreclosure Fee (Recoverable)/50% allowable CONV complaint filed fee less 30% previously billed

Service From Date: 2/13/2019    Service To Date: 2/13/2019

Review State Rule - Borrower Recoverability

| | | | | | | $1,370.00 | $0.00 | $1,370.00 |
|---|---|---|---|---|---|---|---|---|

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Service Costs - Statutory Mailings | | | 02/15/2019 | 1 | $0.50 | $0.50 | $0.00 | $0.50 |

Note: Postage Costs - Statutory Mailing Recoverable - Statutory Mailing may pertain to either Defendant or Interested Party - Please refer to specific backup for details

Service From Date: 2/15/2019    Service To Date: 2/15/2019

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Filing Costs - Filing Fee Complaint | | | 02/13/2019 | 1 | $250.00 | $250.00 | $0.00 | $250.00 |

Note: Filing Costs - Complaint (Recoverable)

| | | | | | | $250.50 | $0.00 | $250.50 |
|---|---|---|---|---|---|---|---|---|

Execution Date Time:    04/26/2019 09:13:27 PM    Pages: 1/ 2

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Service From Date: 2/13/2019 | | | Service To Date: 2/13/2019 | | | | | |
| Service Costs - Service of Notice | | | 02/13/2019 | 1 | $135.00 | $135.00 | $0.00 | $135.00 |

Note: Service Costs - Service of Process (3 Parties) Total cost of Service is $195/ Non-Recoverable portion of service is $135/ Non-Recoverable based on PA/NJ statute

| Service From Date: 2/21/2019 | | | Service To Date: 2/21/2019 | | | | | |
|---|---|---|---|---|---|---|---|---|
| Service Costs - Service of Notice | | | 02/21/2019 | 1 | $60.00 | $60.00 | $0.00 | $60.00 |

Note: Service Costs - Service of Process (3 Parties) Total cost of Service is $195/ Recoverable portion of service is $60

| Service From Date: 2/21/2019 | | | Service To Date: 2/21/2019 | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $195.00 | $0.00 | $195.00 |
| **Total:** | | | | | | $1,815.50 | $0.00 | $1,815.50 |

**Invoice Level Exceptions**
Review State Rule - Borrower Recoverability, Review State Rule - Borrower Recoverability

**Invoice Level Comment**
OK

| Execution Date Time: | 04/26/2019 09:13:27 PM | | Pages: 2/ 2 |
|---|---|---|---|

**Xome Field Services LLC fka Field**

28753 Network Place

Chicago, IL 60673

### Property Insp. - Property Inspection Services - INVOICE

| | |
|---|---|
| Ditech Financial LLC - MSP | |

345 St Peter Street
St Paul, MN 55102
Re: MCMILLAN SONYA
5 JEFFERSON ST
CLIFTON, NJ 07011 0000
Loan #:
Loan Type: FannieMae
Inv. ID / Cat. ID: ▮ / ▮
Cost Center:
CONV-FN Case No:
GSE Code: F
GSE REO Rem. Code:
Entity Code:

| | |
|---|---|
| Invoice #: | ▮7 |
| Invoice Status: | Check Requested |
| Input By: | Luis Ruiz |
| Date Submitted: | 2/26/2019 |
| Invoice Date: | 2/22/2019 |
| Vendor Ref #: | |
| Vendor Code: | FASI |
| Payee Code: | ▮ |
| Type: | Non Judicial |
| Order Date | 2/19/2019 |
| Order Complete | 2/22/2019 |
| Acquisition Date: | |
| Paid In Full Date: | N/A |
| Foreclosure Removal Date: | N/A |
| MS Status | N/A |
| Relief Requested Date | N/A |
| Protection Begin Date | N/A |
| Protection End Date | N/A |
| HiType | 1 |
| Class Code | AA |

Invoice ID: ▮
Asset Number:
Approver Name: Jennifer Passen
Outsourcer:

| Submitted Date | 1st Reviewed Date | Last Reviewed Date | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 2/26/2019 | 5/17/2019 | 5/17/2019 | | 3/4/2019 | 5/17/2019 | |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Property Services - Insp - Occupancy Inspection | | | 02/22/2019 | 1 | $15.00 | $15.00 | $0.00 | $15.00 |

Note: Occupancy Verification
Service From Date: 2/22/2019     Service To Date: 2/22/2019

| | | | | | | $15.00 | $0.00 | $15.00 |
|---|---|---|---|---|---|---|---|---|
| **Total:** | | | | | | **$15.00** | **$0.00** | **$15.00** |

**Invoice Level Exceptions**
None

**Invoice Level Comment**
Per Requested Service

Execution Date Time:   05/17/2019 09:08:09 PM                              Pages: 1/1

**Safeguard Properties Management,**

7887 Safeguard Circle

Valley View, OH 44125 5742



### Property Insp. - Property Inspection Services - INVOICE

| | |
|---|---|
| Ditech Financial LLC - MSP | |
| | Invoice #: |
| 345 St Peter Street | Invoice Status:    Check Requested |
| St Paul, MN 55102 | Input By:    Stephanie Datko |
| Re: | Date Submitted:    5/28/2019 |
| MCMILLAN SONYA | Invoice Date:    5/24/2019 |
| 5 JEFFERSON ST | Vendor Ref #: |
| CLIFTON, NJ 07011 0000 | Vendor Code:    SAFEGUAR |
| Loan #: | Payee Code: |
| Loan Type:    FannieMae | Type:    Non Judicial |
| Inv. ID / Cat. ID: | Order Date:    5/17/2019 |
| Cost Center: | Order Complete:    5/23/2019 |
| CONV-FN Case No: | Acquisition Date: |
| GSE Code:    F | Paid in Full Date:    N/A |
| GSE REO Rem. Code: | Foreclosure Removal Date:    N/A |
| Entity Code: | |
| | MS Status    N/A |
| | Relief Requested Date    N/A |
| | Protection Begin Date    N/A |
| | Protection End Date    N/A |
| | HiType    1 |
| | Class Code    AA |

| | |
|---|---|
| Invoice ID: | |
| Asset Number: | |
| Approver Name:    Jennifer Passen | |
| Outsourcer: | |

| Submitted Date | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 5/28/2019 | | | | 6/10/2019 | 6/10/2019 | |

| Cost Description(s) | W/H | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Property Services - Insp - Drive By Inspection | | | 05/23/2019 | 1 | $15.00 | $15.00 | $0.00 | $15.00 |

Note: Inspections

| | | | | | | $15.00 | $0.00 | $15.00 |
|---|---|---|---|---|---|---|---|---|
| **Total:** | | | | | | **$15.00** | **$0.00** | **$15.00** |

**Invoice Level Exceptions**

None

**Invoice Level Comment**

Services ordered by servicer

Execution Date Time:    06/10/2019 09:22:23 PM

Pages: 1/ 1

**Safeguard Properties Management,**
7887 Safeguard Circle
Valley View, OH 44125 5742



### Property Insp. - Property Inspection Services - INVOICE

| | |
|---|---|
| Ditech Financial LLC - MSP | |
| | Invoice #: |
| | Invoice Status: Check Requested |
| 345 St Peter Street | Input By: Stephanie Datko |
| St Paul, MN 55102 | Date Submitted: 6/24/2019 |
| Re: MCMILLAN SONYA | Invoice Date: 6/21/2019 |
| 5 JEFFERSON ST | Vendor Ref #: |
| CLIFTON, NJ 07011 0000 | Vendor Code: SAFEGUAR |
| Loan #: | Payee Code: |
| Loan Type: FannieMae | Type: Non Judicial |
| Inv. ID / Cat. ID: / | Order Date: 6/14/2019 |
| Cost Center: | Order Complete: 6/20/2019 |
| CONV-FN Case No: | Acquisition Date: |
| GSE Code: F | Paid in Full Date: N/A |
| GSE REO Rem. Date: | Foreclosure Removal Date: N/A |
| Entity Code: | |
| | MS Status: N/A |
| | Relief Requested Date: N/A |
| | Protection Begin Date: N/A |
| | Protection End Date: N/A |
| | HiType: 1 |
| | Class Code: AA |

Invoice ID:
Asset Number:
Approver Name: Jennifer Passen
Outsourcer:

| SubmittedDate 6/24/2019 | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date 6/26/2019 | Chk Requested 6/27/2019 | Chk Confirmed |
|---|---|---|---|---|---|---|

| Cost Description(s) | WfH | Aff.Ind. | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Property Services - Insp - Access Denied | | | 06/20/2019 | 1 | $15.00 | $15.00 | $0.00 | $15.00 |

Note: Inspections

| | | | | | | $15.00 | $0.00 | $15.00 |
|---|---|---|---|---|---|---|---|---|
| **Total:** | | | | | | **$15.00** | **$0.00** | **$15.00** |

**Invoice Level Exceptions**
None

**Invoice Level Comment**
Services ordered by servicer

Execution Date Time:    06/27/2019 11:08:34 PM                    Pages: 1/1

| Vendor | KML LAW GROUP, P.C. | Regarding: | | Invoice Number: | ▇▇ |
| Address: | 701 Market Street | | MCMILLAN SONYA | Invoice Status: | Check Confirmed |
| | Mellon Independence Center, Suite 5000 | | 5 JEFFERSON ST | Loan No.: | |
| | Philadelphia, PA 19106 1532 | | CLIFTON, NJ 07011 | Loan Type: | FannieMae |
| Payee Code: | ▇▇ | | | Acquisition Date: | |
| Vendor Contact: | Dan Raford | | | Type | Judicial |
| Vendor Ref #: | ▇ | | | Referral Date : | 11/1/2018 |
| Servicer: | Ditech Financial LLC - MSP - (5,1) | | | Loan Location: | |
| Inv. ID / Cat. ID | ▇▇▇▇ | | | Submitted Date: | 4/18/2019 |
| Investor Name | FANNIE MAE AA 261840335 | | | Vendor Invoice Date: | 4/17/2019 |
| Outsource Firm: | LPS Default Solutions | | | Paid In Full Date: | N/A |
| Litigation Status Code: | | | | Foreclosure Removal Date: | N/A |
| Non Code: | B | | | MS Status: | N/A |
| | | | | Relief Requested Date: | N/A |
| | | | | Protection Begin Date: | N/A |
| | | | | Protection End Date: | N/A |

Original Mortgage Amount:    $212,000.00

### Foreclosure - Foreclosure Services

| Submitted | Lst Reviewed | Last Reviewed | Accepted | O/S Recommend Approval | Approved | Chk Requested | Chk Confirmed | Days To Proc |
|---|---|---|---|---|---|---|---|---|
| 04/18/2019 | 05/14/2019 | 05/14/2019 | | 05/14/2019 | 05/15/2019 | 05/15/2019 | 05/16/2019 | 28 |

| Fees | Total: | $0.00 | LoanSphere Invoicing Prev. Billed: | $2,432.50 | Exc. Loan Allow: | | Exc Ord Allw: |
| Costs | Total: | $85.00 | LoanSphere Invoicing Prev. Billed: | $818.44 | Exc. Loan Allow: | | Exc Ord Allw: |
| | | | | | Exc. Loan Total Fees/Costs Alow: | | |
| Totals | Inv Amt: | $85.00 | Prev. Billed: | $3,250.94 | Loan Total Fees/Costs Prev.Billed: $5,508.42 | | Exc Ord Allw: |

### Costs

| Category | IPA Amount | IPA Status | Subcategory | W/H | Aff. 2nd. | Date | Qty | Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Recording Costs | $0.00 | | Certificate of Regularity | | N | 03/29/19 | 1 | $85.00 | $85.00 | $0.00 | $85.00 |

Note: Misc. Abstracting Complaint Review - COR - Default (Non Recoverable)(see attached
Service From Date: 03/29/2019        Service To Date: 03/29/2019

| | | Total | $85.00 | $0.00 | $85.00 |
| | | Invoice Total | $85.00 | $0.00 | $85.00 |

# ditech
## HOME LOANS

**ESCROW DISCLOSURE STATEMENT
AND NOTICE OF NEW MORTGAGE PAYMENT**

| | |
|---|---|
| **Loan Number:** | ▬▬▬ |
| Next Payment Due Date: | 4/1/2018 |
| New Payment Effective Date: | 5/1/2019 |
| New Payment Amount: | $1,480.87 |
| Statement Date: | 9/6/2019 |
| Interest rate: | 4.0000% |
| Principal Balance: | $216,602.45 |

Sonya Mcmillan

5 Jefferson St Apt 3
Clifton, NJ 07014-1593

Each year, we review your escrow account to make sure the escrow portion of your scheduled mortgage payment covers your property taxes and/or insurance premiums. Increases or decreases in your annual taxes and/or insurance premiums may cause your mortgage payment amount to change. Here are the details of your most recent escrow account review. Please take a moment to look over your new escrow and mortgage payment details.

PLEASE NOTE: This notice is being provided for informational purposes only. As a result of at least one bankruptcy case filing that included the above referenced account, Ditech is NOT attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge. THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO THESE CUSTOMER(S).

**New escrow and mortgage payment amount**
*New Payment Effective Date:*    **5/1/2019**

| | Current Payment | New Payment |
|---|---|---|
| Principal &/or Interest | $914.72 | $914.72 |
| Escrow payment | $548.81 | $566.15 |
| Prorated shortage | $0.00 | $0.00 |
| Optional Insurance | $0.00 | $0.00 |
| **Total Payment** | **$1,463.53** | **$1,480.87** |

If you use one of our automatic payment options, we will adjust your electronic withdrawal to ensure your 05/01/19 payment is made in full.
If your current payment includes an amount to cover a previous escrow shortage, this amount will be added. If your current payment includes an adjustment for extra funds you deposited to your escrow account this amount will be deducted.

Customer Service:
(800) -
Customer Service Hours:
Mon-Fri 7 a.m. - 8 p.m. Central Time

When you send in a check to make
your payment, Ditech
may clear the check electronically.

The following information covers your projected escrow account activity from
05/01/19 to 04/01/20.

Projected escrow account disbursements
Annualized items to be paid from your escrow account ($):

City Taxes                         $6,793.83

| | |
|---|---|
| Total disbursements | $6,793.83 |
| Scheduled escrow payment | $566.15 |

### Projected escrow account activity for the next 12 months

| | Anticipated payments $ | | | Escrow Balance $ | |
|---|---|---|---|---|---|
| Date | To Escrow | From Escrow | Description | Projected Escrow | Required Escrow |
| 05/01/19 | | | *Beginning Balance* | *$1,987.64* | *$2,839.96* |
| 05/01/19 | $566.15 | $0.00 | | *$2,553.79* | *$3,406.11* |
| 06/01/19 | $566.15 | $0.00 | | *$3,119.94* | *$3,972.26* |
| 07/01/19 | $566.15 | $1,707.65 | City Tax | *$1,978.44* | *$2,830.76* |
| 08/01/19 | $566.15 | $0.00 | | *$2,544.59* | *$3,396.91* |
| 09/01/19 | $566.15 | $0.00 | | *$3,110.74* | *$3,963.06* |
| 10/01/19 | $566.15 | $1,707.64 | City Tax | *$1,969.25* | *$2,821.57* |
| 11/01/19 | $566.15 | $0.00 | | *$2,535.40* | *$3,387.72* |
| 12/01/19 | $566.15 | $0.00 | | *$3,101.55* | *$3,953.87* |
| 01/01/20 | $566.15 | $1,689.27 | City Tax | *$1,978.43* | *$2,830.75* |
| 02/01/20 | $566.15 | $0.00 | | *$2,544.58* | *$3,396.90* |
| 03/01/20 | $566.15 | $0.00 | | *$3,110.73* | *$3,963.05* |
| 04/01/20 | $566.15 | $0.00 | | *$3,676.88* | *$4,529.20* |
| **Total** | **6,793.80** | **5,104.56** | | | |

These calculations indicate the projected escrow balance will be less than the allowable low point.
The resulting shortage is        **-$852.32.**    An Escrow adjustment of              **$852.32** is scheduled
to be repaid through bankruptcy.

The projected escrow account activity is based on the most recent tax and/or insurance information available as well as the
assumption that your payments will be received as agreed.

Projected low point. The point during the annual period at which the projected escrow balance will reach its lowest point.
Required escrow balance.  To cover unanticipated disbursements, including increases to tax or insurance payments,
there is a 2 month minimum escrow balance allowable by state law and/or your mortgage contract. This amount does not
include mortgage insurance.

*Your 2-month minimum escrow balance is $1132.3
*State law requires that this minimum escrow balance not exceed $1132.3
*Note: If you have an adjustable rate mortgage (ARM), you will receive a notice about your new
 mortgage payment when your ARM rate is scheduled to change.

Imb Tracking Number:

Investor Account #

When Recorded, Return to:
Ditech Financial LLC
2100 East Elliot Road, Building 94 T214
Tempe, AZ 85284

This document was prepared by Ditech Financial LLC

_____ [Space above This Line for Recording Data] _____

Customer(s)[1]: SONYA MCMILLAN
Lender/Servicer ("Lender"): Ditech Financial LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 10/31/2005
Account Number:
MIN:
Property Address ("Property"): 5 JEFFERSON ST, CLIFTON, NJ 07011              KF

### MODIFICATION AGREEMENT

This Modification Agreement ("Agreement"), made this <u>18th</u> day of <u>February</u>, <u>2017</u>, between the Lender and Customer, amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated <u>11/04/2005</u> and recorded in Book or Liber <u>M6822</u>, at page(s) <u>251</u>, and/or Document #<u>2005107345</u> of the <u>Register</u> Records of <u>Passaic County</u>

                (Name of Records)              (County and State, or other Jurisdiction)

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

5 JEFFERSON ST, CLIFTON, NJ 07011
(Property Address)

the real property described in the above-referenced Security Instrument.   ORIGINAL

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    As of 03/01/2017, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $218,865.65 consisting of the unpaid amount(s) loaned to Customer by Lender plus any interest and other amounts capitalized.

2.    Customer promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.000%, from 03/01/2017. Customer promises to make monthly payments of principal and interest of U.S. $914.72, beginning on the 04/01/2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.000% will remain in effect until principal and interest are paid in full. The new monthly payment amount does not include any amounts owed for escrow. Customer may refer to the monthly billing statement for the escrow amount owed. If on 03/01/2057 (the "Maturity Date"), Customer still owes amounts under the Note and

the Security Instrument, as amended by this Agreement, Customer will pay these amounts in full on the Maturity Date. Customer's payment schedule for the modified account is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 4.000% | 03/01/2017 | $914.72 | $585.53, may adjust periodically | $1,500.25, may adjust periodically | 04/01/2017 | 480 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Customer is not a natural person and a beneficial interest in Customer is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Customer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Customer must pay all sums secured by the Security Instrument. If Customer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Customer.

   Customer understands and agrees that:

   (a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

   (e)  Customer acknowledges that Lender is required to report any debt forgiveness to the Internal Revenue Service which may result in consequences regarding Customer's federal, state or local tax liability. In addition, Customer understands that if Customer receives public assistance, the forgiveness of debt may affect Customer's eligibility for these benefits. Customer acknowledges that Lender cannot provide any advice or guidance regarding possible tax consequences or effect on any public

assistance benefits. Customer further acknowledges that Lender has advised that Customer may wish to consult with a tax professional about any possible tax consequences and/or their public assistance office regarding other consequences that may result from the forgiveness of debt.

(f)     Customer agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Customer.

(g)     Customer authorizes Lender, and Lender's successors and assigns, to share certain Customer public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Customer's account balances and activity, with an authorized third Agency or similar entity that is assisting Customer in connection with obtaining a foreclosure prevention alternative, including the trial period plan to modify Customer's account ("Authorized Third Party").

Customer understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Customer's account), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the trial period plan to modify Customer's account, to any insurer, guarantor, or servicer that insures, guarantees, or services Customer's account or any other mortgage account secured by the Property on which Customer is obligated, or to any companies that perform support services to them in connection with the account or any other mortgage account secured by the Property on which Customer is obligated.

Customer consents to being contacted by Fannie Mae, Lender or Authorized Third Party concerning mortgage assistance relating to Customer's account.

4.     By this paragraph, lender is notifying customer that any prior waiver by lender of customer's obligation to pay to lender funds for any or all escrow items is hereby revoked, and customer has been advised of amount needed to fund the escrow items.

Customer will pay to Lender on the day payments are due under the Account Documents as amended by this Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Account Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Account Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Customer shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Customer shall pay Lender the Funds for Escrow Items unless Lender waives Customer's obligation to pay the Funds for any or all Escrow Items. Lender may waive Customer's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Customer shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Customer's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Account Documents, as the phrase "covenant and agreement" is used in the Account Documents. If Customer is obligated to pay Escrow Items directly, pursuant to a waiver, and Customer fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Account Documents and this Agreement and pay such amount and Customer shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in

accordance with the Account Documents, and, upon such revocation, Customer shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Customer for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Customer interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Customer any interest or earnings on the Funds. Lender and Customer can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Customer, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Customer for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Account Documents, Lender shall promptly refund to Customer, any Funds held by Lender.

5.  Customer also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Customer's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Customer is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Customer waives any Timely Payment Rewards rate reduction to which Customer may have otherwise been entitled; and

    (b)   all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6.  Customer understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Customer agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. Customer understands that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If Customer elects not to sign any such corrected Agreement, the terms of the original Account Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Customer will not be eligible for a modification.

Imb Tracking Number:

In Witness Whereof, the Lender and I have executed this Agreement.

JUAN SANTOS GARCIA JR.
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES JULY 9, 2018

Ditech Financial LLC _____ (Seal)
Lender                                    Customer

By: _____

Jason Braxton
Default Services Director

Sworn to and subscribed before me
on this 6th day of MAR, 2017

_____    Date 3/6/2017

_____ (Seal)
                        Customer

Date    **MAR 1 0 2017**

_____    Date 3/6/2017

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

_____ [Space Below This Line For Acknowledgments] _____

Prepared by: CARMINE CRINCOLI

LOAN #: ████████

## InterestOnly<sup>SM</sup>  ADJUSTABLE RATE NOTE
(One-Year LIBOR Index (As Published in *The Wall Street Journal*) – Rate Caps)

## ORIGINAL

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

OCTOBER 31, 2005                                          NEW JERSEY
[Date]                                  [City]                    [State]

5 JEFFERSON STREET UNIT 3, CLIFTON, NJ 07011
[Property Address]

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 212,000.00         (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.875 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
**(A) Time and Place of Payments**
I will make a payment on the   first       day of every month, beginning on   DECEMBER 01, 2005    . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on
 NOVEMBER 01, 2035     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.
**(B) Amount of My Initial Monthly Payments**
My monthly payment will be in the amount of U.S. $ 1,214.58        before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)(d)                    Page 1 of 4                    Initials: 



LOAN #: ▮▮▮▮▮▮

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the **first** day of **NOVEMBER, 2015**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO & ONE-QUARTER** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.875** % or less than **2.250** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **11.875** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

Initials 



LOAN #: ▮▮▮▮▮▮▮▮

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials 



LOAN #: ▮▮▮▮▮▮▮

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
SONYA MCMILLAN                                    -Borrower

PAY TO THE ORDER OF

_____ (Seal)
                                                 -Borrower

_____
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS. INC

BY _____                               _____ (Seal)
   David A. Spector                              -Borrower
   Managing Director

_____ (Seal)
                                                 -Borrower

*[Sign Original Only]*

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)                    Page 4 of 4

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
CARMINE CRINCOLI

KAREN BROWN
REGISTER
PASSAIC COUNTY
New Jersey
INSTRUMENT NUMBER
2005107345
RECORDED ON
Nov 04, 2005
8:47:22 AM
BOOK:M6822
PAGE:251
Total Pages: 18
NJ PRESERVATION   $90.00
ACCOUNT
RECORDING FEES -   $110.00
RECORDER OF DEEDS
TOTAL             $200.00
INV: 483631 USER: SK

[Space Above This Line For Recording Data]

[Doc ID #]

**MORTGAGE**

MIN

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) **"Security Instrument"** means this document, which is dated  OCTOBER 31, 2005       , together
with all Riders to this document.
(B) **"Borrower"** is
SONYA MCMILLAN

Borrower is the mortgagor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) **"Lender"** is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(E) **"Note"** means the promissory note signed by Borrower and dated OCTOBER 31, 2005       . The
Note states that Borrower owes Lender
TWO HUNDRED TWELVE THOUSAND and 00/100

Dollars (U.S. $ 212,000.00       ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  NOVEMBER 01, 2035       .

NEW JERSEY--Single Family--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 10
Initials
VMP -6A(NJ) (0005)    CHL (08/00)(d)    VMP MORTGAGE FORMS - (800)521-7291        Form 3031  1/01
CONV/VA

DOC ID #: ▮▮▮▮▮▮▮▮

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

| COUNTY | of | PASSAIC | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: BLK73.07 LOT1 QUALC0003          which currently has the address of
                    5 JEFFERSON STREET UNIT 3, CLIFTON
                                    [Street/City]

New Jersey     07011     ("Property Address"):
            [Zip Code]

Initials: ▮▮

VMP®-6A(NJ) (0005)     CHL (08/00)          Page 2 of 10          Form 3031  1/01

Prepared by: CARMINE CRINCOLI

## COUNTRYWIDE HOME LOANS, INC.

DATE:     10/31/2005
CASE #:
DOC ID #:
BORROWER: SONYA MCMILLAN
PROPERTY ADDRESS: 5 JEFFERSON STREET UNIT 3
                   CLIFTON, NJ 07011

35 PLAZA E. 65 ROUTE 4 WEST
PARAMUS, NJ 07652
Phone: (201)556-4700
Br Fax No.: (N)

## LEGAL DESCRIPTION EXHIBIT A

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in Clifton City, in the County of Passaic, State of NJ, and being more particularly described as follows:

Known as and designated as Unit No. 3 situate in 5 Jefferson Street Condominium, a condominium, established in accordance with the N.J.S.A. 46:8b-1, et seq., together with an undivided 24.90996% interest in the General Common elements of said condominium appurtenant to the aforesaid unit in accordance with and subject to the terms, conditions, covenants, restrictions, reservations easements, lien as for assessments, and other provisions as set forth in the current Master Deed of 5 Jefferson Street Condominum, recorded July 17, 2003, in the Office of the Passaic Clerk/Register in Deed Book D-627, Page 162, as same may now or hereafter be lawfully amended.

FOR INFORMATION PURPOSES ONLY:  BEING Known as Lot 1 C0003; Block 73.07 on the Official Tax Map of Clifton City, County of Passaic.

Commitment Schedule C

Visual Title Form — CommitC.doc

DOC ID #:

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment

DOC ID #: ▮▮▮▮▮▮▮▮▮▮

within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges

Initials: 

DOC ID #:

that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for

DOC ID #:

enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

Initials: 

@ -6A(NJ) (0005)    CHL (08/00)    Page 8 of 10    Form 3031  1/01

DOC ID #:

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and

Initials:

-6A(NJ) (0005)      CHL (08/00)            Page 7 of 10                              Form 3031  1/01

DOC ID #:

agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest

DOC ID #:

in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to

DOC ID #:                05

reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Sections 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ (Seal)
SONYA MCMILLAN                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

STATE OF NEW JERSEY,    Bergen                    County ss:

On this    31    day of    October                    , before me, the subscriber,
personally appeared    Sonia Mc Millan

who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.

_____
Notary Public

JUDITH CAVALIERE
Notary Public of New Jersey
My Commission Expires Sept. 10, 2009

# CONDOMINIUM RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #: ███████████

Prepared By:
CARMINE CRINCOLI

███████████████  [Doc ID #]  █████████████

THIS  CONDOMINIUM  RIDER  is  made  this THIRTY-FIRST  day of
OCTOBER, 2005  , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
5 JEFFERSON STREET UNIT 3
CLIFTON, NJ 07011
[Property Address]

**MULTISTATE CONDOMINIUM RIDER**-Single Family-Fannie Mae/Freddie Mac UNIFORM
**INSTRUMENT**
VMP -8R (0401)    CHL (04/04)(d)    Page 1 of 3    Initials: ____
VMP Mortgage Solutions (800)521-7291    Form 3140 1/01

DOC ID #: ▮▮▮▮▮▮▮▮▮▮

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

### JEFFERSON ST

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

DOC ID #:  ████████████

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____(Seal)
SONYA MCMILLAN                                    - Borrower

_____(Seal)
                                                  - Borrower

_____(Seal)
                                                  - Borrower

_____(Seal)
                                                  - Borrower

——————————— [Space Above This Line For Recording Data] ———————————

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #: ▮▮▮▮▮▮▮▮▮

Prepared By:
CARMINE CRINCOLI

▮▮▮▮▮▮▮▮▮▮▮  [Doc ID #]

THIS FIXED/ADJUSTABLE RATE RIDER is made this THIRTY-FIRST    day of
OCTOBER, 2005    , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.
("Lender") of the same date and covering the property described in the Security Instrument and located at:
    5 JEFFERSON STREET UNIT 3, CLIFTON, NJ 07011
                    [Property Address]

CONV
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY
2U796-XX (04/02)(d)                    Page 1 of 4                    Initials: 

DOC ID #: ▮▮▮▮▮▮▮

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of    6.875   %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first    day of NOVEMBER,  2015   , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER          percentage points (    2.250   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.875   % or less than    2.250   %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   11.875   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.



DOC ID #

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials 

DOC ID #: ▮▮▮▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
SONYA MCMILLAN                          – Borrower

_____ (Seal)
                                        – Borrower

_____ (Seal)
                                        – Borrower

_____ (Seal)
                                        – Borrower

CONV
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY
2U768-XX (04/02)                    Page 4 of 4

END OF DOCUMENT



### Passaic County Document Summary Sheet

| | Transaction Identification Number | |
|---|---|---|
| PASSAIC COUNTY CLERK | | |

PASSAIC COUNTY CLERK

GRAND STREET

ROOM 113

PATERSON NJ 07501

**Return Address** *(for recorded documents)*

KML LAW GROUP, P.C.

701 MARKET ST STE 5000

PHILADELPHIA PA 19106

| Official Use Only | | |
|---|---|---|
| **Submission Date** *(mm/dd/yyyy)* | | 01/24/2019 |
| **No. of Pages** *(excluding Summary Sheet)* | | 2 |
| **Recording Fee** *(excluding transfer tax)* | | $52.00 |
| *(Convenience Charge of $2.00 included)* | | |
| **Realty Transfer Tax** | | $0.00 |
| **Total Amount** | | $52.00 |

```
    DANIELLE IRELAND-IMHOF
           CLERK
       PASSAIC COUNTY
         New Jersey

     INSTRUMENT NUMBER
        2019003934
        RECORDED ON
        Jan 25, 2019
         9:28:21 AM
    BOOK:AS642 PAGE:42
      Total Pages: 4

NJ PRESERVATION ACCOUNT $15.00
RECORDING FEES -         $35.00
RECORDER OF DEEDS
EFILING CONVENIENCE FEE   $2.00
TRUST FUND
TOTAL PAID               $52.00
INV: 1305222 USER: ML
```

| **Document Type** | ASSIGNMENT OF MORTGAGE |
|---|---|
| **Electronic Recordation Level** | L2 - Level 2 (With Images) |

**Municipal Codes**

| CLIFTON CITY | 02 |
|---|---|

A288EB

### Additional Information (Official Use Only)

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF PASSAIC COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

## Passaic County Document Summary Sheet

| ASSIGNMENT OF MORTGAGE | Type | ASSIGNMENT OF MORTGAGE | | | | |
|---|---|---|---|---|---|---|
| | Consideration | | | | | |
| | Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| | Document Date | 01/17/2019 | | | | |
| | Reference Info | | | | | |
| | Book ID | Book | Beginning Page | Instrument No. | | Recorded/File Date |
| | | 6822 | 251 | | | |

| | Name | Address |
|---|---|---|
| | SONYA MCMILLAN | |
| | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | |
| | COUNTRYWIDE HOME LOANS INC | |

| | Name | Address |
|---|---|---|
| | DITECH FINANCIAL LLC | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | | | | |

*DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF PASSAIC COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

# Assignment of Mortgage

NJ50949FC
MERS MIN#: ▮▮▮▮▮▮▮▮▮▮
MERS PHONE#: ▮▮▮▮▮▮▮
PO Box 2026, Flint, MI 48501-2026, 1901 E. Voorhees Street, Suite C, Danville, IL 61834

THE ASSIGNOR

**Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. Its Successors and Assigns** referred to as the Assignor, for one dollar ($1.00) and other good and valuable consideration, the receipt whereof is hereby acknowledged, hereby assigns to:
**Ditech Financial LLC** residing or located at:

> **2100 East Elliot Rd.**
> **Bldg. 94 Mail Stop T325**
> **Tempe, AZ 85284**

referred to as the Assignee; a certain Mortgage dated **10/31/2005**, made by **Sonya McMillan** referred to as the Mortgagor(s). The property covered by the Mortgage is located in the **City of Clifton** in **Passaic** County, New Jersey. (Block 73.07 Lot 1 Qual: C0003) The Mortgage was recorded on **11/04/2005** in the office of the County Recording Officer of **Passaic** County, New Jersey, **in Book M6822, Page 251** of the book of mortgages. The original amount of the Mortgage was **$212,000.00.**

> **To have and to hold** the same unto the Assignee forever, subject only to all the provisions contained in the Mortgage.

> In all references in this Assignment to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

---

(For Recorder's Use Only)

```
         DANIELLE IRELAND-IMHOF
                 CLERK
             PASSAIC COUNTY
               New Jersey

          INSTRUMENT NUMBER
              2019003934
              RECORDED ON
             Jan 25, 2019
              9:28:21 AM
     BOOK:AS642 PAGE:42
          Total Pages: 4

  NJ PRESERVATION ACCOUNT  $15.00
  RECORDING FEES -         $35.00
  RECORDER OF DEEDS
  EFILING CONVENIENCE FEE   $2.00
  TRUST FUND
  TOTAL PAID               $52.00
  INV: 1305222 USER: ML
```

AOM – 5 Jefferson Street, Unit 3, Clifton,  NJ 07011

**Signatures.** I agree to the terms of this Assignment. If the Assignor is a corporation, its proper
authorized agents sign.

> **Mortgage Electronic Registration Systems, Inc., as nominee
> for Countrywide Home Loans, Inc. Its Successors and
> Assigns**
>
> Ronica Holsinger
> Assistant Vice President
> January __17__, 2019

STATE OF ARIZONA

COUNTY OF MARICOPA        SS:

I CERTIFY that on the __17__ day of January, 2019

Ronica Holsinger personally came before me and stated to my satisfaction that this person (or if more than
one, each person):
(a)  was the maker of the attached instrument;
(b)  was authorized to and did execute this instrument as
     Assistant Vice President
of **Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc., its
successors and assigns,** the entity named in this instrument; and,
(c)  executed this instrument as the act of the entity named in this instrument.

> Notary Public, Charles Vaughn



CHARLES VAUGHN
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires
February 14, 2022

---

| *ASSIGNMENT OF MORTGAGE* | *Record and return to:* |
|---|---|
| Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. Its Successors and Assigns | **KML LAW GROUP, P.C.**<br>**BNY Mellon Independence Center – Suite 5000**<br>701 Market Street<br>Philadelphia, PA 19106-1532 |
| TO | |
| **Ditech Financial LLC** | |

AOM – 5 Jefferson Street, Unit 3, Clifton, NJ 07011

# Exhibit "B"

**STATISTICAL INFORMATION ONLY: Debtor must select the number of each of the following items included in the Plan.**

**2** Valuation of Security   **0** Assumption of Executory Contract or Unexpired Lease   **2** Lien Avoidance

**Last Revised September 1, 2018**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

IN RE:                                                          Case No.  **19-17063**

                                                               Judge **Rosemary Gambardella**
**McMillan, Sonya**
                              Debtor(s)

## CHAPTER 13 PLAN AND MOTIONS

[  ] Original                    [X] Modified/Notice Required          Date:  **September 3, 2019**

[  ] Motions Included            [  ] Modified/No Notice Required

THE DEBTOR HAS FILED FOR RELIEF UNDER
CHAPTER 13 OF THE BANKRUPTCY CODE

### YOUR RIGHTS MAY BE AFFECTED

You should have received from the court a separate *Notice of the Hearing on Confirmation of Plan*, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. Anyone who wishes to oppose any provision of this Plan or any motion included in it must file a written objection within the time frame stated in the *Notice*. Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated. This Plan may be confirmed and become binding, and included motions may be granted without further notice or hearing, unless written objection is filed before the deadline stated in the Notice. The Court may confirm this plan, if there are no timely filed objections, without further notice. See Bankruptcy Rule 3015. If this plan includes motions to avoid or modify a lien, the lien avoidance or modification may take place solely within the chapter 13 confirmation process. The plan confirmation order alone will avoid or modify the lien. The debtor need not file a separate motion or adversary proceeding to avoid or modify a lien based on value of the collateral or to reduce the interest rate. An affected lien creditor who wishes to contest said treatment must file a timely objection and appear at the confirmation hearing to prosecute same.

> **The following matters may be of particular importance. Debtors must check one box on each line to state whether the plan includes each of the following items. If an item is checked as "Does Not" or if both boxes are checked, the provision will be ineffective if set out later in the plan.**

THIS PLAN:

[  ] DOES [X] DOES NOT CONTAIN NON-STANDARD PROVISIONS. NON-STANDARD PROVISIONS MUST ALSO BE SET FORTH IN PART 10.

[ X ] DOES [  ] DOES NOT LIMIT THE AMOUNT OF A SECURED CLAIM BASED SOLELY ON VALUE OF COLLATERAL, WHICH MAY RESULT IN A PARTIAL PAYMENT OR NO PAYMENT AT ALL TO THE SECURED CREDITOR. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

[X] DOES [  ] DOES NOT AVOID A JUDICIAL LIEN OR NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

Initial Debtor(s)' Attorney: **DLW**          Initial Debtor: **SM**                    Initial Co-Debtor:

## Part 1: Payment and Length of Plan

a.   The debtor shall pay $ __485.00__ per **month** to the Chapter 13 Trustee, starting on ___**October 1, 2019**___ for approximately **55** months.

b.   The debtor shall make plan payments to the Trustee from the following sources:
     **[X]** Future Earnings
     **[ ]** Other sources of funding (describe source, amount and date when funds are available):

c.   Use of real property to satisfy plan obligations:
     **[ ]** Sale of real property
          Description:
          Proposed date for completion: _____

     **[ ]** Refinance of real property
          Description:
          Proposed date for completion: _____

     **[ ]** Loan modification with respect to mortgage encumbering property
          Description:
          Proposed date for completion: _____

d.   **[ ]** The regular monthly mortgage payment will continue pending the sale, refinance or loan modification.

e.   **[ ]** Other information that may be important relating to the payment and length of plan:

## Part 2: Adequate Protection [  ] NONE

a. Adequate protection payments will be made in the amount of $ **None** to be paid to the Chapter 13 Trustee and disbursed pre-confirmation to _____ (creditor).

b. Adequate protection payments will be made in the amount of $ __**1,350.00**__ to be paid directly by the debtor(s) outside the Plan, pre-confirmation to **Ditech Financial, LLC** (creditor).

## Part 3: Priority Claims (Including Administrative Expenses)

a. All allowed priority claims will be paid in full unless the creditor agrees otherwise:

| Creditor | Type of Priority | Amount to be Paid |
|---|---|---|
| **Law Office of Dionne Wade** | **Administrative Expense** | **1,190.00** |

b. Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount:
Check one:
**[X]** None
**[ ]** The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim pursuant to 11 U.S.C.1322(a)(4):

| Creditor | Type of Priority | Claim Amount | Amount to be Paid |
|---|---|---|---|
| **None** | | | |

## Part 4: Secured Claims

**a. Curing Default and Maintaining Payments on Principal Residence: [  ]NONE**

The Debtor shall pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor shall pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| **Ditech** | 5 Jefferson St Apt 3, Clifton, NJ 07014-1593 | **21,745.22** | **2.00%** | **21,745.22** | **1,632.38** |

**b. Curing and Maintaining Payments on Non-Principal Residence & other loans or rent arrears: [X] NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor will pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| **None** | | | | | |

**c. Secured claims excluded from 11 U.S.C. 506: [X] NONE**

The following claims were either incurred within 910 days before the petition date and are secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or incurred within one year of the petition date and secured by a purchase money security interest in any other thing of value:

| Name of Creditor | Collateral | Interest Rate | Amount of Claim | Total to be Paid through the Plan Including Interest Calculation |
|---|---|---|---|---|
| **None** | | | | |

**d. Requests for valuation of security, Cram-down, Strip Off & Interest Rate Adjustments [  ] NONE**

1.) The debtor values collateral as indicated below. If the claim may be modified under Section 1322(b)(2), the secured creditor shall be paid the amount listed as the "Value of the Creditor Interest in Collateral," plus interest as stated. The portion of any allowed claim that exceeds that value shall be treated as an unsecured claim. If a secured claim is identified as having "NO VALUE" it shall be treated as an unsecured claim.

**NOTE: A modification under this section ALSO REQUIRES
the appropriate motion to be filed under Section 7 of the Plan.**

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Annual Interest Rate | Total Amount to be Paid |
|---|---|---|---|---|---|---|---|
| **The Bank of New York, et al.** | 5 Jefferson St Apt 3, Clifton, NJ 07014-1593 | **56,000.00** | **205,000.00** | **205,000.00** | **0.00** | **0.00%** | **0.00** |

3

| Wells Fargo Dealer Services | 2010 Volvo XC90 AWD | 6,060.02 | 4,039.00 | 0.00 | 4,039.00 | 4.00% | 4,463.00 |
|---|---|---|---|---|---|---|---|

2.) Where the Debtor retains collateral and completes the Plan, payment of the full amount of the allowed secured claim shall discharge the corresponding lien.

**e. Surrender [X] NONE**

Upon confirmation, the stay is terminated as to surrendered collateral only under 11 U.S.C. 362(a) and that the stay under 11 U.S.C 1301 be terminated in all respects. The Debtor surrenders the following collateral:

| Creditor | Collateral to be Surrendered | Value of Surrendered Collateral | Remaining Unsecured Debt |
|---|---|---|---|
| **None** | | | |

**f. Secured Claims Unaffected by the Plan [X] NONE**

The following secured claims are unaffected by the Plan:
**None**

**g. Secured Claims to Be Paid in Full Through the Plan [X] NONE**

| Creditor | Collateral | Total Amount to be Paid through the Plan |
|---|---|---|
| **None** | | |

## Part 5: Unsecured Claims [ ] NONE

**a. Not separately classified** allowed non-priority unsecured claims shall be paid:

___ Not less than $ _____ to be distributed *pro rata*
___ Not less than _____ percent
 **X** *Pro Rata* distribution from any remaining funds

b. **Separately Classified Unsecured Claims** shall be treated as follows:

| Creditor | Basis for Separate Classification | Treatment | Amount to be Paid |
|---|---|---|---|
| **None** | | | |

## Part 6: Executory Contracts and Unexpired Leases [X] NONE

(NOTE: See time limitations set forth in 11 U.S.C. 365(d)(4) that may prevent assumption of non-residential real property leases in this Plan.)

All executory contracts and unexpired leases, not previously rejected by operation of law, are rejected, except the following, which are assumed:

| Creditor | Arrears to be Cured in Plan | Nature of Contract or Lease | Treatment by Debtor | Post-Petition Payment |
|---|---|---|---|---|
| **None** | | | | |

## Part 7: Motions [ ] NONE

4

**NOTE: All plans containing motions must be served on all potentially affected creditors, together with local form, Notice of Chapter 13 Plan Transmittal, within the time and in the manner set forth in D.N.J. LBR 3015-1. A Certification of Service, Notice of Chapter 13 Plan Transmittal and valuation must be filed with the Clerk of Court when the plan and transmittal notice are served.**

### a. Motion to Avoid Liens under 11 U.S.C. Section 522(f). [  ] NONE

The Debtor moves to avoid the following liens that impair exemptions:

| Creditor | Nature of Collateral | Type of Lien | Amount of Lien | Value of Collateral | Amount of Claimed Exemption | Sum of All Other Liens Against the Property | Amount of Lien to be Avoided |
|---|---|---|---|---|---|---|---|
| None | | | | | | | |

### b. Motion to Void Liens and Reclassify Claim from Secured to Completely Unsecured. [ ] NONE

The Debtor moves to reclassify the following claims as unsecured and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Total Amount of Lien to be Reclassified |
|---|---|---|---|---|---|---|
| The Bank of New York, et al. | 5 Jefferson St Apt 3, Clifton, NJ 07014-1593 | 56,000.00 | 205,000.00 | 205,000.00 | 0.00 | 0.00 |
| Wells Fargo Dealer Services | 2010 Volvo XC90 AWD | 6,060.02 | 4,039.00 | 0.00 | 4,039.00 | 2,021.62 |

### c. Motion to Partially Void Liens and Reclassify Underlying Claims as Partially Secured and Partially Unsecured. [X] NONE

The Debtor moves to reclassify the following claims as partially secured and partially unsecured, and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Amount to be Deemed Secured | Amount to be Reclassified as Unsecured |
|---|---|---|---|---|---|
| None | | | | | |

## Part 8: Other Plan Provisions

### a. Vesting of Property of the Estate

**X** Upon Confirmation
____ Upon Discharge

### b. Payment Notices

Creditors and Lessors provided for in Sections 4, 6 or 7 may continue to mail customary notices or coupons to the Debtor notwithstanding the automatic stay.

### c. Order of Distribution

The Standing Trustee shall pay allowed claims in the following order:

1) **Trustee Commissions**
2) **Other Administrative Claims**
3) **Secured Claims**
4) **Lease Arrearages**
5) **Priority Claims**
6) **General Unsecured Claims**

**d. Post-petition claims** The Standing Trustee **[ ]** is, **[X]** is not authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a) in the amount filed by the post-petition claimant.

## Part 9: Modification [X] NONE

If this plan modifies a Plan previously filed in this case, complete the information below.

Date of Plan being modified:   **September 3, 2019**

| Explain below **why** the Plan is being modified. | Explain below **how** the Plan is being modified. |
| --- | --- |
| **To address Ditech's Proof of Claim** | **Addressed Ditech's Proof of Claim** |

Are Schedules I and J being filed simultaneously with this Modified Plan? **[ ]** Yes **[X]** No

## Part 10: Non-Standard Provision(s): Signatures Required

Non-Standard Provisions Requiring Separate Signatures:

**[X]** NONE
**[ ]** Explain here:

Any non-standard provisions placed elsewhere in this plan are ineffective.

## Signatures

The Debtor(s) and the attorney for the Debtor(s), if any, must sign this Plan.

By signing and filing this document, the debtor(s), if not represented by an attorney, or the attorney for the debtor(s) certify that the wording and order of the provisions in this Chapter 13 Plan are identical to Local Form, Chapter 13 Plan and Motions, other than any non-standard provisions included in Part 10.

I certify under penalty of perjury that the above is true.

Date: **September 3, 2019**          **/S/ Sonya McMillan**
                                      Debtor

Date:

                                      Joint Debtor

Date: **September 3, 2019**

6

**/S/ Dionne L. Wade**
Attorney for the Debtor(s)

7

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY (NEWARK)
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

830206
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500
Attorneys for DITECH FINANCIAL LLC

| In Re: | Case No:  19-17063 - VFP |
| | |
| SONYA MCMILLAN | Hearing Date: 10/03/2019 |
| | |
| | Judge:  Vincent F. Papalia |
| | |
| | Chapter:  13 |

## CERTIFICATION OF SERVICE

1.    I, Chris Villegas:

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for Phelan Hallinan Diamond & Jones, PC, who represents DITECH FINANCIAL LLC in the above captioned matter.

☐ am the _____ in the above case and am representing myself.

2.    On October 4, 2019 I sent a copy of the following pleadings and/or documents to the parties listed below:

**Objection to Plan**

3.    I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Dated:  __10/09/2019_____        /s/ _Chris Villegas_____
                                                                    Chris Villegas

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Sonya Mcmillan<br>5 Jefferson Street, Unit 3, Clifton, NJ 07011 | Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☐ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| Dionne L. Wade, Esquire<br>1301 Main Ave<br>2nd Floor<br>Clifton, NJ 07011 | Debtor's Attorney | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| Marie-ann Greenberg, Trustee<br>30 Two Bridges Road<br>Suite 330<br>Fairfield, NJ 07004 | Trustee | ☐ Hand-delivered<br><br>☐ Regular Mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| U.S. Trustee<br>US Dept of Justice<br>Office of the US Trustee<br>One Newark Center Ste 2100<br>Newark, NJ 07102 | U.S. Trustee | ☐ Hand-delivered<br><br>☐ Regular Mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |

* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.